IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| CATHY MONROE SIMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| PMA INSURANCE COMPANY d/b/a ) | **(Class Action)** |
| PMA INSURANCE GROUP; PMA ) | |
| MANAGEMENT CORP.; AND ) | |
| MANUFACTURERS ALLIANCE ) | |
| INSURANCE COMPANY ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

Plaintiff Cathy Monroe Sims, individually and on behalf of all persons similarly situated, alleges:

## INTRODUCTION

1. Medicare provides federal healthcare funds for three groups of individuals: (1) the aged, (2) the disabled, and (3) persons with end stage renal disease. Many Medicare recipients are also covered by private health care plans and, as relevant to this case, workers' compensation for workplace injuries and occupational diseases.

2. Prior to 1981, Medicare generally acted as the "primary" payer in situations where there was double coverage for the Medicare recipient. In other words, Medicare paid for Medicare beneficiaries' medical expenses even when the beneficiaries carried other insurance that covered the same expenses.

3. In 1980, however, in the face of skyrocketing Medicare costs, Congress passed the Medicare Secondary Payer Act (the "MSPA"). The MSPA made Medicare coverage "secondary" to any private coverage in order to reduce federal spending (and the burden on federal taxpayers) and to protect the financial wellbeing of the Medicare program. Congress designed the MSPA to ensure that medical costs more properly paid by primary insurance and private plans are not shifted to Medicare, which is now a secondary payer.

4. In order to ensure that primary insurance and private plans comply with their obligations to cover medical costs, Congress authorized individuals to bring a private cause of action and recover double damages from primary payers that failed to pay medical expenses for which they were responsible and failed to reimburse Medicare for medical expenses Medicare consequently paid. 42 U.S.C. § 1395y(b)(3)(A).

5. Despite this legislation, Defendants have unlawfully shifted workers' compensation medical expenses to Medicare and federal taxpayers. Plaintiff, a certified nursing assistant, seriously injured her back while attempting to move a patient. When Defendants, who are responsible for Plaintiff's workers' compensation related medical expenses, refused to pay for some of the medical care Plaintiff received for her injury, Medicare paid the health care providers. Subsequently, after the North Carolina Industrial Commission ruled that Defendants were required to pay for that care, Defendants failed to reimburse Medicare, choosing instead to allow the cost for that care to be shifted to federal taxpayers.

6. Plaintiff brings this class action pursuant to the private right of action authorized by Congress to ensure that Defendants comply with their statutorily mandated responsibilities and cease to maximize its profits by wrongfully shifting costs to Medicare.

## PARTIES

7. Plaintiff Cathy Monroe Sims resides in Marston, North Carolina.

8. Defendant PMA Insurance Company d/b/a as the PMA Insurance Group is a subsidiary of the PMA Companies, Inc. and is organized under the laws of Pennsylvania with its headquarters in Blue Bell, Pennsylvania. PMA Companies, Inc., maintains an office in North Carolina.

9. Defendant PMA Management Corporation is a subsidiary of PMA Companies, Inc., and is organized under the laws of Pennsylvania with its headquarters in Blue Bell, Pennsylvania.

10. Defendant Manufacturers Alliance Insurance Company ("MAICO") is a corporation organized under the laws of Pennsylvania with its headquarters in Blue Bell, Pennsylvania.

11. Defendants PMA Insurance Company d/b/a as the PMA Insurance Group, PMA Management Corporation, and Manufacturers Alliance Insurance Company are collectively referred to as "Defendants".

12. Defendants were the carrier and administrator responsible for Plaintiff's compensable workers' compensation injury and were the primary payer within the

meaning of the MSPA with respect to Plaintiff's injury. Defendants have regularly conducted business in North Carolina.

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 1395y(b)(3)(A).

14. Venue is proper in this District because Plaintiff resides in this District.

## FACTUAL ALLEGATIONS

### A. Statutory Background

15. The MSPA prohibits Medicare from paying for medical expenses whenever "payment has been made or can reasonably be expected to be made *under a workmen's compensation law or plan* of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii) (emphasis added). If, however, a primary payer "has not made or cannot reasonably be expected to make payment with respect to the item or service promptly," then Medicare may make a payment on the Medicare beneficiary's behalf, *conditioned on* reimbursement from the primary payer. *Id.* § 1395y(b)(2)(B)(i).

16. Consequently, although workers' compensation policies and plans are, under the MSPA, primarily responsible for payment of medical expenses incurred for workplace injuries covered by workers' compensation, Medicare will conditionally pay medical expenses when a workers' compensation claim is denied or when a primary

4

payer does not pay a medical expense promptly. *See* 42 U.S.C. § 1395y(b)(2)(i); 42 C.F.R. § 411.21. As the Center for Medicare and Medicaid Services ("CMS") has explained: "A conditional payment is a payment Medicare makes for services another payer may be responsible for. Medicare makes this conditional payment so that the beneficiary won't have to use his own money to pay the bill. The payment is 'conditional' because it must be repaid to Medicare when a settlement, judgment, award or other payment is made."[1]

17. In 1986, in a further attempt to ensure that health costs would not be shifted from primary payers to Medicare, Congress amended the MSPA to grant Medicare beneficiaries, such as Plaintiff, a "private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan" that fails to reimburse Medicare for its conditional payments. Omnibus Rec. Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874 (codified at 42 U.S.C. § 1395y(b)(3)(A)).

18. However, in 2015, the Occupational Safety & Health Administration issued a report finding that, despite the MSPA and the enactment of a private right of action, "through Medicare and Medicaid alone, taxpayers pay almost 19 percent of the medical costs of [occupational injuries and illnesses]." See D. Michaels, PhD, MPH, "Adding Inequality to Injury: The Costs of Failing to Protect Workers on the Job," OSHA p. 10

---

[1] *See* https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Coordination-of-Benefits-and-Recovery-Overview/Medicare-Secondary-Payer/Medicare-Secondary-Payer.html.

5

Case 1:20-cv-00249-TDS-JLW   Document 1   Filed 03/16/20   Page 5 of 19

(June 2015).[2] The National Safety Council has estimated that medical expenses for workers' compensation injuries totaled $35 billion in 2018.[3] These two reports suggest that more than $6.5 billion in work-related medical costs are being shifted to Medicare and Medicaid each year and consequently to the federal taxpayer.

19. Primary payers in workers' compensation cases, such as Defendants, have historically had a practice of attempting to shift to Medicare the cost of medical care for Medicare beneficiaries. Rather than act as a primary payer and pay medical expenses as they come due, insurers and third party administrators can refuse to pay certain medical expenses or they can just delay paying the health care providers with the result that Medicare will then go ahead and conditionally pay the medical bills. Then, the insurers and administrators will often either wait until the settlement of the case and at that point reimburse Medicare for its conditional payments or make no attempt to reimburse Medicare at all.

20. The workers' compensation primary payers, such as Defendants, have a strong incentive to wait and reimburse Medicare instead of paying medical expenses as they are incurred. Rather than pay the fully billed amount for the medical expenses, primary payers can, through the reimbursement strategy outlined above, pay medical expenses based on the Medicare fee schedule as opposed to the higher fee schedules set by state workers' compensation systems. And, if Medicare makes no demand for

---

[2] Published at https://www.osha.gov/Publications/inequality_michaels_june2015.pdf.

[3] *See* https://injuryfacts.nsc.org/work/costs/work-injury-costs/.

reimbursement because Medicare is unaware of the carrier or administrator's responsibility for the medical expenses, the primary payers can avoid paying medical expenses at all.

21. Primary payers can also avoid or at least delay receiving any demand from Medicare for reimbursement by failing to properly comply with statutory reporting requirements that require primary payers to notify Medicare of their responsibility for ongoing medical expenses. By avoiding or delaying required payments to Medicare, primary payers like Defendants are able to use the owed amounts to their own benefit, such as to accumulate interest or ultimately pay an amount reduced by inflation.

### B. Defendants' Failure to Comply with the MSPA

22. In 2011, Plaintiff was employed as a certified nursing assistant by Century Care Management and was working in a nursing home in North Carolina. On June 16, 2011, Plaintiff sustained an injury to her lower back when she attempted to move a patient.

23. Defendants were the insurance company or companies bearing the risk and providing insurance coverage for workers' compensation claims for Century Care Management during the time period when Plaintiff's workers' compensation claim arose.

24. Defendants failed to accept or deny Plaintiff's claim until January 13, 2012, when Defendants filed an N.C. Industrial Commission Form 63. The Form 63 stated that Defendants agreed to pay Plaintiff's medical expenses connected with her work-related injury without prejudice to denying the compensability of Plaintiff's workers'

7

compensation claim. This form was signed by Jackie Holland, a Senior Account Claims Representative with Defendant PMA Insurance Company.

25. On September 11, 2012, Plaintiff filed a motion to compel Defendants to either accept or deny Plaintiff's workers' compensation claim, as statutorily required. Two days later, Ms. Holland, the Senior Account Claims Representative, signed a Form 60 in which Defendants admitted Plaintiff's right to compensation for her injury that occurred on June 16, 2011. Under North Carolina law, a Form 60 is the equivalent of an award entered by the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-82(b).

26. Plaintiff was found disabled for purposes of Social Security Disability Insurance on September 1, 2011. She became eligible to receive Medicare on February 1, 2014.

27. Subsequently, Defendants refused to pay for treatment that Plaintiff needed for her back injury, forcing Plaintiff to file a motion to compel Defendants to provide that treatment. Because of Defendants' refusal to pay for her medical treatment, Medicare was required to pay for it and did in fact pay for it.

28. On May 15, 2015, the Full Commission of the North Carolina Industrial Commission entered an Opinion and Award finding that Plaintiff had sustained a compensable injury by accident to her back on June 16, 2011 and that Defendants had accepted Plaintiff's claim by executing a Form 60. The Full Commission concluded that Plaintiff was entitled to "ongoing [medical] care, related to her back injury and that said care is causally related to her workplace accident of 16 June 2011." The Full

Commission further concluded that Defendants failed to meet their burden of proving that the treatment Plaintiff was requesting was unrelated to her compensable workers' compensation claim. The Full Commission therefore ordered Defendants to provide treatment for Plaintiff's back as recommended by her treating physician. Defendants did not appeal the Full Commission's Opinion and Award, and the time to appeal has long since expired.

29. Upon information and belief, Defendants failed to properly notify CMS of their responsibility for Plaintiff's medical expenses arising out of her compensable workers' compensation injury.

30. On August 11, 2015 and September 3, 2015, CMS issued conditional payment letters showing the conditional payments due by Defendants. CMS sent the letters to MAICO, a sister company of Defendant PMA Insurance Company. Upon information and belief, all Defendants received copies of those letters.

31. The September 3, 2015 letter stated: "As of the date of this letter, Medicare has identified $2,391.39 in conditional payments that we believe are associated with your claim, based upon the available information. You/your attorney will find a listing of claims that comprise this total as an attachment to this letter. Please review this listing and inform us if you/your attorney disagree with the inclusion of any claim, along with an explanation of why you/your attorney disagree." Upon information and belief, Defendants neither repaid the conditional payments nor challenged any of the conditional payment claims.

9

32. On March 15, 2017, CMS issued another conditional payment letter to Defendant MAICO showing that Defendants owed $6,166.31 in conditional payments. The amount of the conditional payments had increased because of Defendants' failure to pay additional medical expenses for which it was responsible under the Full Commission Opinion and Award.

33. The March 15, 2017 conditional payment letter notified Defendants:

> Medicare has identified a claim or number of claims for which you have primary payment responsibility and Medicare has made primary payment. Medicare must recover these payments from the entity responsible for payment or when payment has been made, from the entity/individual who has received payment for those claims (see 42 U.S.C. 1395y(b)(2)). As of the date of this letter, based upon the information available, Medicare has identified $6,166.31 in conditional payments. . . . Please be advised, this case file is still being investigated to obtain any other outstanding Medicare conditional payments; therefore, the enclosed listing of current conditional payments is not final. If you believe the enclosed itemization of conditional payments is incomplete, inaccurate, or that you are not responsible for repaying Medicare for these payments, please provide documentation along with an explanation to support your dispute. Please include a description of the illness/injury with your response.

34. Defendants did not immediately respond to the March 15, 2017 letter and did not reimburse Medicare for the conditional payments.

35. On March 1, 2018, CMS sent Plaintiff a letter indicating that a conditional payment claim dispute had been submitted. The letter stated that CMS' Benefits Coordination & Recovery Center had received a request for claims to be removed or added with respect to the conditional payments associated with Plaintiff's workers'

10

Case 1:20-cv-00249-TDS-JLW   Document 1   Filed 03/16/20   Page 10 of 19

compensation injury. CMS had partially agreed with the dispute and adjusted the amount due. Because also on March 1, 2018, CMS sent a new conditional payment letter stating that $4,779.73 in conditional payments were due – a figure less than in the prior conditional payment letter – it appeared that Defendants had administratively challenged some of the conditional payments and CMS had removed some claims in response to the claim dispute.

36. The March 1, 2018 conditional payment letter sent to MAICO stated: "If you believe the enclosed itemization of conditional payments is incomplete, inaccurate, or that you are not responsible for repaying Medicare for these payments, please provide documentation along with an explanation to support your dispute."

37. In addition to Medicare sending Defendants conditional payment letters, Plaintiff's workers' compensation attorney also emailed Defendants' workers' compensation attorney copies of the March 2017 and the March 2018 conditional payment letters.

38. Defendants have not challenged – administratively or otherwise – any of the payments set out in the March 1, 2018 conditional payment letter and have not reimbursed Medicare for the $4,779.73 in conditional payments that are due.

39. Because Plaintiff's workers' compensation case has not settled and Defendants are still responsible for paying Plaintiff's ongoing medical expenses, Plaintiff believes that there may be additional payments made by Medicare for which Defendants are responsible, as Medicare suggested in its conditional payment letter.

11

40. Defendants have not reimbursed Medicare for the conditional payments made on behalf of Plaintiff even though Defendants are responsible for those payments by virtue of the Form 60 and the Full Commission Opinion and Award. Indeed, Defendants have made no request to Medicare for a final conditional payment amount.

41. By failing to request or obtain a final conditional payment amount from Medicare, Defendants have chosen to delay and forestall its obligation to pay all amounts owed to Medicare.

42. Defendants do not have in place adequate policies and procedures (a) that ensure Defendants properly notify Medicare when Defendants have become a primary payer with respect to a workers' compensation case and (b) that ensure Defendants timely and fully reimburse Medicare for any conditional payments made in workers' compensation cases once Defendants have, under the law, demonstrated responsibility for ongoing medical expenses.

43. By failing to reimburse Medicare for conditional payments that Medicare made, Defendants have shifted the cost of medical expenses for workplace injuries and diseases to Medicare and federal taxpayers even though Defendants, under state workers' compensation systems and the MSPA, have primary and full responsibility for those expenses.

44. Additionally, Defendants have (a) subjected Plaintiff and the Class members to co-payments and other out-of-pocket expenses under the Medicare system that would not have been owed under the workers' compensation system, (b) forced

12

medical providers to accept lesser payments through the Medicare system than the amounts otherwise payable by Defendants under state workers' compensation systems, and (c) exposed Plaintiff and the Class members to the risk of being subject to an action to recover the amounts that Defendants owe to Medicare.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action on behalf of herself and as a class action pursuant to Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), on behalf of similarly situated Classes, which are defined as follows:

> *National Class:* All individuals in the United States who (a) have incurred medical expenses as a result of an injury or an occupational disease covered by workers' compensation that were conditionally paid by Medicare, (b) for which Defendants have a demonstrated responsibility established at least 135 days[4] prior to the filing of this lawsuit by virtue of a final judgment or award of a state workers' compensation tribunal, a binding admission of responsibility for medical expenses, or a settlement agreement, and (c) for which Defendants have not reimbursed Medicare or administratively challenged its responsibility for those conditional payments.
>
> *North Carolina Class*: All individuals in North Carolina who (a) have incurred medical expenses as a result of an injury or an occupational disease covered by workers' compensation that were conditionally paid by Medicare, (b) for which Defendants have a demonstrated responsibility established at least 135 days prior to the filing of this lawsuit by virtue of a final judgment or award of a state workers' compensation tribunal, a binding admission of responsibility for medical expenses, or a settlement

---

[4] *See* MMSEA Section 111, Medicare Secondary Payer Mandatory Reporting Guide, Chapter IV, at 6-65 (providing that primary payer must report its responsibility for ongoing medical expenses within 135 days of a settlement, judgment, award or other payment establishing its responsibility).

13

agreement, and (c) for which Defendants have not reimbursed Medicare or administratively challenged its responsibility for those conditional payments.

46. Excluded from the National Class and the North Carolina Class (referred to jointly as "the Class") are: Defendants, Defendants' board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing; the Court, the Court's immediate family, and Court staff; and any person who timely and properly excludes himself or herself from the Class.

47. Plaintiff believes that there are numerous Class members located throughout the United States and throughout North Carolina, the exact number and their identities being known by Defendants, making the Class so numerous and geographically dispersed that joinder of all members is impracticable.

48. There are questions of law and fact raised by the named Plaintiff's claims common to those raised by the Class she seeks to represent. Such common questions predominate over questions affecting only individual members of the Class. Common legal and factual questions/issues include but are not limited to:

    a. Whether Defendants fail to reimburse Medicare for conditional payments in workers' compensation cases for which Defendants are the primary payers.

    b. Whether Defendants fail to properly notify CMS of their status as primary payers in workers' compensation cases.

14

c. Whether Defendants fail to properly notify CMS of their responsibility for ongoing medical expenses in workers' compensation cases.

d. Whether Defendants fail to properly reimburse Medicare for conditional payments following settlement of workers' compensation cases.

e. What policies and procedures Defendants have in place relating to notification of CMS when Defendants have become a primary payer with respect to a workers' compensation case.

f. What policies and procedures Defendants have in place relating to notification of CMS when Defendants have demonstrated responsibility for ongoing medical expenses.

g. What policies and procedures Defendants have in place relating to reimbursement of Medicare for any conditional payments made in workers' compensation cases once Defendants have demonstrated responsibility for ongoing medical expenses.

h. What policies and procedures Defendants have in place related to responding to conditional payment letters sent by CMS.

49. Plaintiff's claims are typical of the claims of the Class members, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in violation

15

of the MSPA, and Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other Class members. Plaintiff's interests are coincident with, and not antagonistic to, those of the other Class members.

50. Plaintiff's counsel is unaware of any conflicts of interest between the Class representative and absent Class members with respect to the matters at issue in this litigation. The Class representative will vigorously prosecute the suit on behalf of the Class.

51. Plaintiff is represented by counsel who have substantial experience in complex and class action litigation. Plaintiff's attorneys have committed sufficient resources to vigorously represent the Class.

52. The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice. Moreover, the prosecution of separate actions by individual members of the Class could result in inconsistent or varying adjudications with respect to individual members of the Class.

53. Defendants have acted or failed to act on grounds generally applicable to Class members, necessitating declaratory and injunctive relief for the Class.

## CLAIM FOR RELIEF
**On Behalf of the National and North Carolina Classes**

54. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully restated here.

55. Medicare made conditional payments on behalf of Plaintiff and the Class members for injuries and occupational diseases covered by workers' compensation.

56. Because Defendants provided workers' compensation insurance coverage to Plaintiff's and the Class members' employers, Defendants are primary payers under the MSPA with respect to conditional payments made by Medicare on behalf of Plaintiff and the Class members for medical expenses that should have been covered by workers' compensation.

57. By virtue of a judgment, award, formal admission of responsibility, or settlement agreement, Defendants have a demonstrated responsibility under 42 U.S.C. § 1395y(b)(2)(B)(ii) and 42 C.F.R. § 411.22 to reimburse Medicare for conditional payments made on behalf of Plaintiff and the Class members.

58. Defendants have failed to reimburse Medicare for conditional payments Medicare asserts it made on behalf of Plaintiff and the Class members. The conditional payments involved either medical expenses for which Defendants had, under the law, demonstrated responsibility or expenses that Defendants did not timely administratively challenge as not being expenses for which Defendants had primary responsibility. By failing to exhaust its administrative remedies, Defendants are bound by Medicare's determination of the conditional payments for which Medicare is entitled to reimbursement.

17

59. Defendants are, therefore, liable under 42 U.S.C. § 1395(b)(3)(A) for double damages for failure to reimburse Medicare for conditional payments made on behalf of Plaintiff and the Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief from the Court:

1. An order certifying this action as a class action and appointing Plaintiff's counsel to serve as Class Counsel;

2. Double damages under 42 U.S.C. § 1395(b)(3)(A);

3. Statutory and common law interest;

4. Injunctive relief requiring Defendants in the future (a) to comply with the MSPA, (b) to promptly reimburse Medicare for any conditional payments upon demonstration of its responsibility under the MSPA for medical expenses incurred in workers' compensation cases, and (c) to promptly begin paying all medical expenses due when billed by medical providers;

5. An award of reasonable attorneys' fees and litigation expenses; and

6. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all issues so triable.

DATED: March 16, 2020

/s/ *Martha A. Geer*
Martha A. Geer
N.C. State Bar No. 13972
Scott C. Harris
N.C. State Bar No. 35328
Patrick M. Wallace
N.C. State Bar No. 48138
Jeremy R. Williams
N.C. State Bar No. 48162
**WHITFIELD BRYSON & MASON LLP**
P.O. Box 12638
Raleigh, North Carolina 27605
Telephone: (919) 600-5000
Facsimile: (919) 600-5035
Email: martha@wbmllp.com
Email: scott@wbmllp.com
Email: pat@wbmllp.com
Email: jeremy@wbmllp.com

Cameron Simmons
N.C. State Bar No. 26750
**CAMERON SIMMONS LAW**
P.O. Box 12889
Wilmington, North Carolina 28405
Telephone: (910) 208-9882
Facsimile: (910) 863-8682
Email: cds@cameronsimmonslaw.com

*Attorneys for Plaintiff and the putative Class*