IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CATHY MONROE SIMS,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )
                                      )
PMA INSURANCE COMPANY d/b/a/          )      1:20-cv-249
PMA INSURANCE GROUP, PMA              )
MANAGEMENT CORP.,                     )
MANUFACTURERS ALLIANCE                )
INSURANCE COMPANY, and PMA            )
COMPANIES, INC.,                      )
                                      )
            Defendants.               )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is a putative class action seeking recovery for the alleged failure of private insurers to make timely conditional payments for Medicare services. Before the court is the motion of Defendants PMA Insurance Company d/b/a PMA Insurance Group, PMA Management Corp., Manufacturers Alliance Insurance Company, and PMA Companies, Inc.[1] to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, Rule 12(b)(6). (Doc. 16.) Plaintiff Cathy Monroe Sims has responded in opposition. (Doc. 25.) For the reasons stated herein, Defendants' motion will

_____

[1] Defendants state that PMA Insurance Company is not a valid corporate entity. (Doc. 18 at 7 n.1.) They also state that PMA Companies, Inc. has not been served (id.), although it appears that a summons for PMA Companies, Inc. was issued on October 23, 2020 (Doc. 28). Regardless, because Defendants do not rely on these defects in the present motion, the court does not consider them here.

be granted and the amended complaint will be dismissed.

**I.  BACKGROUND**

The facts alleged in the complaint, viewed in the light most favorable to Sims, show the following:

In 2011, Sims was employed as a certified nursing assistant by Century Care Management. (Doc. 14 ¶ 33.) On June 16, 2011, she suffered a lower back injury in the course of her work. (Id.)

On January 13, 2012, Defendants filed an N.C. Industrial Commission Form 63 that indicated that Defendants agreed to pay Sims's medical expenses connected to the work-related injury without prejudice to denying the compensability of her workers' compensation claims. (Id. ¶ 35.) On September 13, 2012, Defendants filed an N.C. Industrial Commission Form 60 in which they admitted Sims's right to compensation, including medical expenses, for her work-related injury. (Id. ¶ 37.)

On February 1, 2014, Sims became eligible to receive Medicare. (Id. ¶ 39.)

On May 15, 2015, following Defendants' failure to pay for certain treatments relating to Sims's back injury, the Full Commission of the North Carolina Industrial Commission issued an opinion and award that concluded Sims was entitled to ongoing medical care for her back injury. (Id. ¶ 42.) After evaluating the requested care, the Full Commission ordered Defendants to authorize treatment for Sims's back injury as recommended by her

2

authorized treating physician.  (Id.; Doc. 11-6 at 14–25.)

On August 5, 2015, the Centers for Medicare and Medicaid Services ("CMS") sent the parties a Rights and Responsibilities letter that indicated Defendants' responsibility to reimburse Medicare for payments made for treatment of Sims's back injury. (See Doc. 14 ¶ 47.)

On August 11, 2015, CMS sent Defendants a conditional payment letter with an enclosed list of conditional payments.  (Id. ¶ 49.) The letter stated, "Medicare has identified $4552.87 in conditional payments that we believe are associated with your claim." (Id.; Doc. 11-1.)  The letter also indicated that Medicare was "still investigating this case file" and the enclosed listing of conditional payments was "not a final list and w[ould] be updated." (Doc. 11-1 at 3.)  The letter prominently featured the statement, "This is not a bill.  Do not send payment at this time." (Id. at 2.)  The letter also told Defendants that they should "refrain from sending any monies to Medicare prior to . . . receipt of a demand/recovery calculation letter." (Id. at 2–3.)  Although the letter asked Defendants to review the enclosed listing of conditional payments and inform Medicare if they disagreed with the inclusion of any claim, the letter did not indicate a timeframe in which Defendants were required to respond.[2]  (Id.)

---

[2] Unlike a conditional payment notification, a conditional payment letter

3

On September 3, 2015, CMS sent Defendants another conditional payment letter. (Doc. 14 ¶ 49.) This letter was identical to the first, except the conditional payment amount was revised downward to $2,397.39. (Id. ¶ 51; Doc. 11-2.)

Following receipt of these letters, Sims alleges, Defendants neither repaid the conditional payments nor disputed any of the claims. (Doc. 14 ¶ 51.)

On March 15, 2017, CMS sent Defendants a third conditional payment letter. (Id. ¶ 52; Doc. 11-3.) This letter stated that Medicare "identified a claim . . . for which you have primary payment responsibility and Medicare has made primary payment." (Doc. 11-3 at 2.) The letter identified $6,166.31 in conditional payments. (Id. at 3.) The letter also stated that Medicare was "still investigating the case file to obtain any other outstanding Medicare conditional payments; therefore, the enclosed listing of current conditional payments is not final." (Id.) As with the prior two letters, the letter indicated that Defendants should inform Medicare if they believed that the enclosed listing was

---

has no required time period in which a primary payer must respond. See Medicare's Recovery Process, CMS (May 7, 2020), https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Beneficiary-Services/Medicares-Recovery-Process/Medicares-Recovery-Process. In contrast, a conditional payment notification requires a primary payer to submit a dispute within 30 days. Id. If no dispute is submitted in response to a conditional payment notification, a recovery demand letter is issued. Id. The recovery demand letter advises a primary payer of the amount owed and how to repay the debt. Id.

inaccurate, but it did not include a date by which Defendants were required to respond. (Id.)

On February 8, 2018, Defendants submitted a conditional payment dispute to CMS challenging most of the payments included in the March 15, 2017 letter. (Doc. 14 ¶ 55; Doc. 11-4.)

On March 1, 2018, CMS sent a letter indicating that it partially agreed with the dispute and adjusted the amount of conditional payments identified downward to $4,779.73. (Doc. 14 ¶ 56.) CMS issued Defendants a fourth conditional payment letter that reflected the adjusted amount. (Id.; Doc. 11-5.) In all other ways, the March 1, 2018 conditional payment letter was identical to the March 15, 2017 letter, including indicating that the enclosed listing of conditional payments was "not final" and instructing Defendants to inform Medicare if they believed the listing was inaccurate. (See Doc. 11-5 at 2-3; Doc. 11-3 at 2-3.)

On April 6, 2018, Defendants submitted another conditional payment dispute to CMS challenging the conditional payments identified in the March 1, 2018 letter. (Doc. 14 ¶ 61; Doc. 11-6.) CMS appears to have made no response to that dispute.

On March 16, 2020, Sims filed the present lawsuit against Defendants for violation of the Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395 et seq., and sought certification as a class action. (Doc. 1.)

5

On April 15, 2020, CMS sent Defendants a fifth conditional payment letter. (Doc. 14 ¶ 64; Doc. 11-7.) This letter was identical to the third and fourth letters, except in that the conditional payment amount increased to $10,859.34. (See Doc. 11-7 at 2-3.) As with the prior letters, the letter indicated that the enclosed listing of conditional payments was "not final" and instructed Defendants to inform Medicare if they believed the listing was inaccurate. (Id. at 3.)

On April 23, 2020, Defendants submitted a conditional payment dispute to CMS challenging the conditional payments identified in the April 15, 2020 letter. (Doc. 14 ¶ 65; Doc. 11-8.) CMS responded on May 4 with a letter to Defendants indicating that it agreed with the dispute and adjusted the amount of identified conditional payments downward to zero.[3] (Doc. 14 ¶ 66; Doc. 11-

---

[3] The amended complaint refers to the May 4 letter but alleges only that in it CMS "announc[ed] that Defendants' dispute had been allowed." (Doc. 14 ¶ 66.) Although the amended complaint does not expressly acknowledge it, the effect of the letter was to reduce Defendants' alleged responsibility for reimbursement to zero, which is expressly stated in the letter. (Doc. 11-9 at 4.) Where a document is considered integral to a complaint because the document has an independent legal significance to a plaintiff's claims, or where the complaint relies upon a document's terms and effects, the court may properly consider it at this stage. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). Here, the letter is expressly referenced in the amended complaint, and Sims's claims are based upon the legal effect (or lack of legal effect) of this letter compared to CMS's earlier letters. The amended complaint alleges that "Defendants have failed to reimburse Medicare for conditional payments Medicare asserts it made on behalf of Plaintiff" (Doc. 14 ¶ 89) and, as indicated by Sims's opposition, Sims would have the court consider "the effects of CMS's 2018 decision, PMA's choice not to seek further review, and the impact, if any, of the unexplained May

6

9.)  CMS included with the letter a revised payment summary form that identified the total conditional payments owed as $0.00. (Doc. 11-9 at 4.)

On June 12, 2020, Defendants filed a motion to dismiss based on lack of subject matter jurisdiction or, in the alternative, failure to state a claim.  (Doc. 10.)  Sims requested and received an extension of time to reply.  (Doc. 13.)  On August 5, 2020, without the consent of Defendants or leave of the court, Sims filed an amended complaint.[4]  (Doc. 14.)  The amended complaint alleges Defendants violated the MSPA and seeks certification as a class action.  (Id.)  Defendants again filed a motion to dismiss based on lack of subject matter jurisdiction or, in the alternative, failure to state a claim.  (Doc. 16.)  The motion is now fully briefed and ready for resolution.  (See Docs. 18, 25, 27.)

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction and are empowered to act only in those specific instances authorized by

---

4, 2020 letter."  (Doc. 25 at 8.)  As such, the May 4, 2020 letter is integral to the complaint and will be considered by the court.

[4] Although Defendants acknowledge that Sims's amended complaint is improper, they argue that the case as a whole should be dismissed, even taking into account the amended complaint, because the amended complaint "does not cure the fundamental defects in her case that warrant immediate dismissal."  (Doc. 18 at 12.)  Because Defendants do not rest on this procedural defect, the court does not either.

Congress." Goldsmith v. Mayor & City Council of Balt., 845 F.2d 61, 63 (4th Cir. 1988) (citation omitted). Whether a court has subject matter jurisdiction is a "threshold matter" that a court must consider prior to addressing the merits of a claim. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998); Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 548 (4th Cir. 2006).

A party may contest the court's subject matter jurisdiction — including challenging timeliness and standing — pursuant to Federal Rule of Civil Procedure 12(b)(1). See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005); Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006). When a Rule 12(b)(1) motion challenges the validity of the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, where the challenge is not based on the accuracy of the facts alleged but rather on the complaint's failure "to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009); see also 24th Senatorial Dist. Republican Comm. v. Alcorn, 820 F.3d 624, 629 (4th Cir. 2016) (allowing dismissal at the pleading stage under Rule 12(b)(1)

8

"where the issue before the court is 'purely a legal question that can be readily resolved in the absence of discovery.'" (quoting Blitz v. Napolitano, 700 F.3d 733, 739 (4th Cir. 2012)). Ordinarily, subject matter jurisdiction is assessed at the time the original complaint is filed. Mollan v. Torrance, 22 U.S. 537, 539 (1824). But "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Rockwell Int'l Corp. v. United States, 549 U.S. 457, 473–74 (2007).

### 2. Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn

in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept the legal conclusions drawn from the facts." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013) (quoting E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts," and a court does not consider "unwarranted inferences, unreasonable conclusions, or arguments" when evaluating the legal sufficiency of a complaint on a 12(b)(6) motion. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678 (explaining that mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (alteration in original) (quoting Twombly, 550 U.S. at 555)). In reviewing a 12(b)(6) motion, the court may "consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## B. Subject Matter Jurisdiction

Before considering the merits of any claim, the court must first determine that it has subject matter jurisdiction over it.

10

Defendants challenge the court's subject matter jurisdiction on two grounds. First, they argue that the case is not ripe for adjudication. Second, they contend that Sims lacks standing because she has not suffered an injury-in-fact.

Because Defendants do not contest the veracity of the facts underlying Sims's claim to subject matter jurisdiction but rather argue that the facts alleged in the amended complaint are not sufficient to establish the court's subject matter jurisdiction, the court "must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns, 585 F.3d at 193. However, under this standard, the court "need not accept the legal conclusions drawn from the facts." Spaulding, 714 F.3d at 776.

With this standard in mind, the court turns to Defendants' challenges to subject matter jurisdiction.

### 1. Ripeness

Defendants contend that Sims's claim is not ripe for adjudication because at the time the complaint was filed, Defendants were in discussions with CMS regarding the accuracy of the identified conditional payments. Defendants further contend that since that time, CMS has found that Defendants do not currently owe any reimbursement. "Although [Sims] might assert an injury in the future if Medicare determined [Defendants] w[ere] responsible for reimbursing payments on her behalf and if

11

[Defendants] failed to do so," Defendants argue, this claim is dependent on future uncertainties and therefore is not ripe for adjudication. (Doc. 18 at 14.) Sims responds that her claims are not dependent on future uncertainties but rather depend "on an assessment of past events." (Doc. 25 at 7.) She contends that this action "concern[s] [Defendants]'[] historical pattern of delay in making payments as obligated" and that the key issues in this case — "the effect of CMS's 2018 decision, [Defendants]'[] choice not to seek further review, and the impact, if any, of the unexplained May 4, 2020 letter" — are final and ripe for adjudication. (Doc. 25 at 8–9.)

"The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" <u>Miller</u>, 462 F.3d at 318–19 (quoting <u>Rescue Army v. Mun. Court of L.A.</u>, 331 U.S. 549, 584 (1947)). To determine whether a case is ripe for judicial consideration, courts balance "'the fitness of the issues for judicial decision' [with] the 'hardship to the parties of withholding court consideration.'" <u>Franks v. Ross</u>, 313 F.3d 184, 194 (4th Cir. 2002) (quoting <u>Ohio Forestry Ass'n v. Sierra Club</u>, 523 U.S. 726, 733 (1998)). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." <u>Miller</u>, 462 F.3d at 319; <u>see also</u> <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998) ("A claim is not ripe for

12

adjudication if it rests upon contingent future events that . . . may not occur at all." (internal quotation marks omitted)). To determine hardship to the parties, courts consider "the difficulty the parties will face if the court does not weigh in." <u>Great W. Cas. Co. v. Packaging Corp. of Am.</u>, 444 F. Supp. 3d 664, 673 (M.D.N.C. 2020); <u>see also</u> <u>Miller</u>, 462 F.3d at 319.

The amended complaint bases its claim for relief on the allegations that "Medicare made conditional payments on behalf of" Sims, "Defendants are primary payers under the MSPA," "Defendants have a demonstrated responsibility under [the MSPA] . . . to reimburse Medicare for conditional payments," and "Defendants have failed to reimburse Medicare for conditional payments." (Doc. 14 ¶¶ 86–89.) These allegations demonstrate that the action in controversy is Defendants' alleged failure to properly reimburse Medicare as required by the MSPA — not Defendants' history of delayed payments, as Sims contends.[5] This interpretation is consistent with the statutory provision under which Sims brings

---

[5] Although the amended complaint outlines a number of alleged procedural violations of the MSPA, including Defendants' history of allegedly delayed payments (<u>see, e.g.</u>, Doc. 14 ¶¶ 44–45, 69–73), the private cause of action within the MSPA is limited and applies only to cases in which a primary plan with a demonstrated responsibility for payment fails to reimburse Medicare as required. <u>See</u> 42 U.S.C. § 1395y(b)(3)(A). The MSPA does not create a private cause of action for all possible violations of the MSPA, such as Defendants' history of allegedly delayed repayments. <u>See</u> <u>MSP Recovery, LLC v. Allstate Ins. Co.</u>, 835 F.3d 1351, 1362 n.3 (11th Cir. 2016) (the MSPA does not provide for a qui tam action); <u>Woods v. Empire Health Choice, Inc.</u>, 574 F.3d 92, 101 (2d Cir. 2009) (same).

the present action. Pursuant to the MSPA, a private right of action exists solely "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with" the MSPA. 42 U.S.C. § 1395y(b)(3)(A). Therefore, the court must determine whether Sims has plausibly alleged that Defendants' failure to reimburse Medicare is final and not dependent on future uncertainties.

Sims maintains that Defendants' obligation to reimburse Medicare became final after CMS responded to Defendants' February 2018 dispute of the March 15, 2017 letter. (See Doc. 25 at 7–8.) However, CMS's response to that dispute undermines Sims's position. On March 1, 2018, CMS sent Defendants a letter indicating that it partially agreed with the February 2018 dispute and adjusted the amount of identified conditional payments downward. (Doc. 14 ¶ 56; Doc. 11-5.) That same day, CMS sent Defendants a new conditional payment letter that reflected the adjusted amount and stated that CMS "is still investigating . . .; therefore, the enclosed listing of current conditional payments is not final." (Doc. 11-5 at 3 (emphasis added).) The letter also indicated that Defendants should alert CMS if they believed that the listing was inaccurate. (Id.) And, in fact, Defendants did so. On April 6, 2018, Defendants submitted a dispute letter

14

challenging the March 1, 2018 letter.[6] (Doc. 14 ¶ 61; Doc. 11-6.) Taken together, the ongoing communications between Defendants and CMS show that Defendants' obligation to reimburse Medicare did not become final based on the February 2018 dispute.

Subsequent developments provide further support for this conclusion. Following the March 1, 2018 letter, CMS did not correspond with Defendants again until April 15, 2020, at which time CMS sent Defendants another conditional payment letter identifying $10,859.34 in conditional payments. (Doc. 14 ¶ 64; Doc. 11-7.) The letter indicated that the conditional payments identified were "not final" and allowed Defendants to submit disputes to those payments. (Doc. 11-7 at 2-3.) And in response, Defendants submitted a dispute. (Doc. 11-8.) CMS ultimately agreed with the dispute and revised the amount of conditional payments identified to $0.00. (Doc. 11-9.) This correspondence and dispute process, coupled with CMS's revisions to the conditional payments owed, indicate that Defendants' failure to reimburse Medicare was not final. Defendants' requirement to reimburse Medicare remains contingent upon it being determined with appropriate finality that Defendants owe Medicare reimbursement (for example, by CMS issuing a demand recovery

---

[6] Although Sims contests the propriety of this dispute letter (see Doc. 14 ¶ 61), the March 1, 2018 conditional payment letter expressly permitted the dispute. (See Doc. 11-5 at 3.) It is not the court's place to question CMS's procedures.

letter), and Sims's suit remains contingent upon Defendants failing to do so after that occurs. As such, Sims's claim is not currently fit for judicial decision. See Sullivan v. Farm Bureau Mut. Ins. Co. of Mich., No. 1:10-CV-909, 2011 WL 1231264, at *3 (W.D. Mich. Apr. 1, 2011) ("Plaintiff's original Complaint attempts to simultaneously litigate his [MSPA] claim with the underlying claim. The [MSPA] claim is accordingly premature."); Geer v. Amex Assurance Co, No. 09-11917, 2010 WL 2681160, at *6 (E.D. Mich. July 6, 2010) ("While the parties have settled prior claims, those settlements were for specific time periods and amounts . . . . The Court finds no justification to . . . proceed with [the] [MSPA] claim before liability has been established on the underlying dispute. The Court therefore finds Plaintiff's [MSPA] claim to be premature."); Fresenius Med. Care Holdings, Inc. v. Brooks Food Grp., Inc., No. CIV.A. 3:07CV14-H, 2007 WL 2480251, at *8 (W.D.N.C. Aug. 28, 2007) ("[T]here has clearly been no finding *at this time* of the Defendants' responsibility for the contested payments. If and when such a determination is made, . . . [if] the Defendants fail to reimburse the appropriate funds, then the MSPA allows for a private cause of action for double damages." (emphasis in original)).

Given that Defendants have not yet breached their duty to reimburse CMS under the MSPA, Sims will suffer no hardship if the court does not weigh in. If and when that occurs, Sims will be

16

able to bring her claim.  As such, Sims's claim should be dismissed as premature.

### 2.  Injury-in-fact

Defendants also challenge subject matter jurisdiction on the basis that Sims lacks standing to bring this claim because she has not suffered an injury-in-fact.  In response, Sims contends that she was injured when Defendants failed to pay for her medical care as required under law.  (Doc. 25 at 9-10.)  Because injury-in-fact is a close cousin of ripeness, see Miller, 462 F.3d at 319, and Sims's arguments in support of ripeness overlap with those in support of an injury-in-fact, the court will also address whether Sims has sufficiently alleged an injury-in-fact as an alternative basis for dismissal.

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).  "[S]tanding is an essential and unchanging part" of that case-or-controversy requirement.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992).  To satisfy that constitutional requirement, a plaintiff must demonstrate that (1) she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury is likely to be redressed by a

favorable decision.  <u>Friends of the Earth, Inc. v. Laidlaw Envtl.</u>
<u>Servs. (TOC), Inc.</u>, 528 U.S. 167, 180–81 (2000).  Although distinct
from the ripeness inquiry, the question of whether a party has
standing bears similarities to that inquiry.  <u>Miller</u>, 462 F.3d at
319.

Under the MSPA, a plaintiff suffers an injury-in-fact when
she is the beneficiary of a primary plan and the primary plan fails
to reimburse Medicare as required by the statute.  <u>See</u> <u>O'Connor v.</u>
<u>Mayor & City Council of Balt.</u>, 494 F. Supp. 2d 372, 374 (D. Md.
2007).  No additional showing of injury is necessary.  <u>Id.</u>  Sims
argues that the facts alleged in the amended complaint demonstrate
that she has suffered an injury-in-fact.  Relying on <u>Netro v.</u>
<u>Greater Balt. Med. Ctr., Inc.</u>, 891 F.3d 522, 526 (4th Cir. 2018),
she claims that the allegations indicate that Defendants had a
legal obligation to reimburse Medicare under the MSPA and failed
to do so.  (Doc. 25 at 9–10.)  In response, Defendants contend
that, notwithstanding the allegations of the amended complaint,
Sims "cannot assert an injury based on [Defendants]'[] alleged
failure to pay Medicare an amount that Medicare has not said
[Defendants] owe[]."  (Doc. 27 at 13.)

Sims is correct that, at the present stage, the court must
accept the facts as alleged in the amended complaint.  <u>Kerns</u>, 585
F.3d at 193.  However, the court need not accept the legal
conclusions drawn from those facts.  <u>Spaulding</u>, 714 F.3d at 776.

18

Sims's contention that Defendants were required to reimburse Medicare, such that their failure to do so constitutes an injury-in-fact, is a conclusion of law that is not afforded a presumption of truth.

Sims's alleged facts do not support her contention. Unlike the plaintiff in Netro, Sims does not have "a concrete private interest in the outcome of the suit" because CMS does not stand to receive any compensation. Cf. 891 F.3d at 526-27 (finding plaintiff suffered an injury because the government's injury was "beyond doubt" and the plaintiff had a concrete interest in recovering the amount that the Medicare provider would recover, if successful). Sims acknowledges that CMS eventually reported that Defendants owe no reimbursement. (See Doc. 14 ¶ 66.) Despite this, Sims asks the court to find that Defendants owe CMS reimbursement, such that she has suffered an injury-in-fact, based on the March 1, 2018 conditional payment letter. (Id. ¶ 67.) Without citing authority, Sims contends that "Defendants' failure to exhaust their administrative remedies precludes Defendants from arguing in federal court that they are not responsible for conditional payments set forth in the March 1, 2018 conditional payment letter." (Id.) However, there is no indication from the March 1, 2018 conditional payment letter that Defendants were obligated to pursue any specified administrative remedy. The

19

letter provided for a dispute process, which Defendants pursued.[7]
On these facts, there appears to be no basis for the court to
consider Defendants as having tacitly accepted, either through
waiver or preclusion, their responsibility to reimburse Medicare
based on the March 1, 2018 letter. Without facts to indicate that
Defendants failed to reimburse Medicare when they were required to
do so, Sims has not plausibly alleged that she has suffered an
injury-in-fact under the MSPA.

This conclusion is consistent with the recovery structure
within the MSPA. Under the MSPA, in order for a plaintiff to
recover in a private cause of action, a primary payer must have a
demonstrated responsibility to reimburse Medicare for given
services and the primary payer must have failed to do so. 42
U.S.C. § 1395y(b)(3)(A); see also Glover v. Liggett Grp., Inc.,
459 F.3d 1304, 1308-09 (11th Cir. 2006). In that case, the primary
payer is subjected to double damages — not only is the primary
payer required to reimburse Medicare, but the primary payer is
also liable to the private plaintiff for that same amount. 42
U.S.C. § 1395y(b)(3)(A); see also Liggett Grp., 459 F.3d at 1309.
Were the court to infer an injury-in-fact based on Defendants'

---

[7] Although there was a period of two years between Defendants' April 2018
dispute letter and CMS's next communication with Defendants in April
2020, it is not clear that this delay was due to any fault of Defendants.
Defendants suggest that the delay may be related to Sims's name change
in the intervening period. (Doc. 27 at 13 n.4.)

failure to reimburse CMS, despite CMS's clear indication that Defendants owe no reimbursement, Defendants would automatically be exposed to double damages without any opportunity to avoid those penalties by reimbursing CMS. See also Liggett Grp., 459 F.3d at 1309 ("[Under] a private cause of action against alleged . . . tortfeasors whose responsibility for payment of medical costs has not been previously established[,] . . . an alleged tortfeasor that is sued under the [MSPA] . . . could not contest liability without risking the penalty of double damages: defendants would have no opportunity to reimburse Medicare *after* responsibility was established but before the penalty attached." (emphasis in original)); Fresenius, 2007 WL 2480251, at *7 (explaining that the MSPA "makes it a condition precedent to reimbursement that there be a 'demonstrated responsibility' to pay for items or services" and "to hold otherwise would open a primary insurer to double damages each time it contests a claim, rather than only when it fails to pay after responsibility has been established").

As Sims has failed to allege that she has suffered an injury-in-fact, she lacks standing to pursue her claim.

### 3. Dismissal on the merits

Having found it lacks subject matter jurisdiction over Sims's claim, the court need not consider Defendants' motion to dismiss

pursuant to Rule 12(b)(6).[8]

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 16) is

GRANTED and the amended complaint is DISMISSED WITHOUT PREJUDICE.

                                    /s/    Thomas D. Schroeder
                                    United States District Judge

February 3, 2021

---

[8] It is noteworthy that the merits analysis would turn on the same factors affecting the jurisdictional analysis and thus would face the same hurdles.  The private cause of action under the MSPA requires three elements: (1) a primary plan, (2) that is responsible to pay for an item or service, and (3) that failed to make the appropriate payment to Medicare for the item or service.  MAO-MSO Recovery II, LLC v. Gov't Emps. Ins. Co., No. PWG-17-711, 2018 WL 999920, at *9 (D. Md. Feb. 21, 2018) (citing Glover v. Philip Morris USA, 380 F. Supp. 2d 1279, 1290 (M.D. Fla. 2005), aff'd sub nom. Liggett Grp., 459 F.3d 1304).  As indicated by the May 4, 2020 conditional payment letter, Defendants are not responsible to pay for any items or services, nor have they failed to make an appropriate payment as required by the MSPA.  (See Doc. 14 ¶ 66; Doc. 11-9 (showing Defendants owe $0.00 in conditional payments).)

22